UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID LYNCH,<br><br>    Plaintiff,<br><br> v.<br><br>WASHINGTON HEALTHCARE AUTHORITY, et al.,<br><br>    Defendants. | CASE NO. C21-5138 BHS<br><br>ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

This matter comes before the Court on Defendants Washington Health Care Authority and Sue Birch's motion for judgment on the pleadings. Dkt. 19. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff David Lynch is a wartime veteran who receives medical care and assistance under the Community Options Program Entry System ("COPES") Medicaid program and a Veteran's Administration disability improved pension, which includes Aid

and Assistance ("AA") and Unusual Medical Expense ("UME")[1] benefits. Dkt. 1-2, ¶¶ 3.1–3.2. He alleges that Defendant Washington Health Care Authority ("the Agency") and its director Defendant Sue Birch have wrongfully taken his AA and UME benefits by defining his VA benefits as a third-party resource, which increases his Medicaid participation amount. *Id.* ¶ 1.1; *see also* WAC 182-513-1340(2)(b). He seeks declaratory and injunctive relief on behalf of himself and a class of similarly situated wartime veterans who have had UME and AA benefits wrongfully taken.[2] Dkt. 1-2 at 15–16.

Washington State participates in the joint state-federal Medicaid program. *See generally* WAC Ch. 182-501. As part of this program, Washington provides in-home personal care services to beneficiaries who are both functionally and financially eligible for the service. *See generally* RCW Ch. 74.39A; WAC Ch. 388-160. Lynch receives such in-home personal care services, and the Agency determined that he is eligible for 158 Medicaid in-home care hours per month. Dkt. 2-2, Ex. A, ¶ 4.1. Although Lynch receives in-home personal care through Medicaid, the services he receives do not cover all of his medical or in-home care needs. Dkt. 1-2, ¶¶ 3.10–3.14. Lynch has an in-home caregiver Monday through Friday for 7.5 hours a day but does not have care on the weekends. *Id.* ¶¶ 3.12–3.15. He requires assistance on the weekends but does not have the money to pay

---

[1] UME is used as a reference to both "Unusual Medical Expenses" and "Unreimbursed Medical Expense" by the parties. *Compare* Dkt. 1-2, ¶ 1.1 (Unreimbursed Medical Expense) *with* Dkt. 20 at 1 (Unusual Medical Expenses). Both monikers appear to be accurate. *See Summy v. Schweiker*, 688 F.2d 1233, 1234 (9th Cir. 1982). Regardless of the naming convention, the benefit excludes any unreimbursed medical expenses from Lynch's income in determining his VA pension. 38 C.F.R. § 3.272(g).

[2] Also pending before the Court is Lynch's motion to certify class, Dkt. 22, and related motion for extension of time, Dkt. 36.

for an additional caregiver. *Id.* Lynch also requires dental implants that cost approximately $57,000, but Medicaid does not cover these unreimbursed dental expenses. *Id.* ¶¶ 3.16–3.23. Lynch took out a loan to cover the cost, which is estimated at $74,733.60 (including interest). *Id.* ¶¶ 3.19–3.21.

To help cover the costs of his dental implants and additional in-home care, Lynch applied for increased pension benefits with the VA. Dkt. 2-2, Ex. A, ¶ 4.9. Lynch intended to use his UME benefits to defray the costs of his dental work, and the AA benefits would allow him to hire another personal care attendant. Dkt. 1-2, ¶¶ 3.25–3.26. The VA increased Lynch's monthly benefit to $1,029, which includes $218 in pension benefits, $765 in AA benefits, and $46 in UME benefits. *Id.* ¶ 3.27; Dkt. 2-2, Ex. A, ¶ 4.10.

The Agency received notice of Lynch's increased VA benefits on December 18, 2019 and sent him a letter the same day informing him that the amount he was required to pay for in-home care would increase to $916 per month, effective January 1, 2020. Dkt. 2-2, Ex. A, ¶ 4.11. The Agency calculated that Lynch had a countable monthly income of $1,146 ($928 in social security plus $218 in VA pension benefits). *Id.* ¶ 4.12 His countable income minus the $1,041 personal needs allowance resulted in a participation amount of $105. *Id.* The Agency counted Lynch's AA and UME benefits as a third-party resource of $811 and determined that Lynch was required to pay $916 ($105 participation plus $811 third-party resource) towards the cost of care. *Id.* ¶ 4.13; *see also* WAC 182-513-1340(2)(b). Lynch thus uses all of his AA and UME monthly benefits for his care provider to pay for continued Medicaid services.

1   Agency benefit determinations are subject to administrative review. First, the
2   appellant (i.e., the challenging benefit recipient) proceeds before the Office of
3   Administrative Hearings and an Administrative Law Judge ("ALJ"). *See* WAC 182-526-
4   0110. Once an initial decision is issued by the ALJ, either party may request review by a
5   Review Judge with the Board of Appeals. WAC 182-526-0560. Here, Lynch challenged
6   the designation of his UME and AA benefits as third-party resources in an administrative
7   hearing. Dkt. 1-2, ¶ 4.6. The ALJ ruled in favor of Lynch, Dkt. 2-2, Ex. A, at 16–24, but
8   the Review Judge reversed the initial decision, *id.*, Ex. B, at 26–38.

9   Lynch subsequently petitioned for judicial review of the Review Judge's decision
10  in Thurston County Superior Court. *See* Dkt. 2; RCW 34.05.570. Lynch brought claims
11  for judicial review of the administrative order entered against him and the applicable
12  Agency rule that designated his AA and UME benefits as third-party resources, as well as
13  other common law and statutory claims. *See* Dkt. 2. On the Agency's motion, the
14  Thurston County Superior Court severed Lynch's claims for damages from the claims he
15  raised under the Washington State Administrative Procedure Act ("WAPA"), RCW Ch.
16  34.05. *See* Dkt. 2-1. Lynch then refiled his non-administrative claims and added claims
17  under the Fifth Amendment and 42 U.S.C. § 1983. *See* Dkt. 1-2. Defendants removed the
18  case to this Court. Dkt. 1.

19  Defendants now move for judgment on the pleadings, arguing that Lynch cannot
20  maintain his federal and state law claims as a matter of law. Dkt. 19. Lynch argues that
21  the Agency imposes an unauthorized burden on veterans by wrongfully taking UME and
22  AA benefits provided by the VA for non-Medicaid services. Dkt. 20.

## II. DISCUSSION

**A.    Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**B.     Federal Claims**

Lynch asserts two claims under federal law: a claim for violations of the Fifth Amendment Takings Clause and a claim under 42 U.S.C. § 1983. Dkt. 1-2 at 14–15. Defendants argue that Lynch's federal claims for violations of the Fifth Amendment Takings Clause fail because he has not alleged a taking of property. Dkt. 19 at 4–6. They appear to concede that the Agency reduces public benefits that Lynch would otherwise receive but assert that no actionable taking has occurred. Lynch, on the other hand, argues that he has adequately alleged a regulatory taking claim or, alternatively, a per se taking claim. Dkt. 20 at 7–18.

**1.     Takings Clause**

The Fifth Amendment Takings Clause prohibits "private property" from being "taken for public use, without just compensation." U.S. Const. amend. V. A classic taking occurs when the "government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). Beyond a classic taking, the Supreme Court has held that "if regulation goes too far it will be recognized as a taking." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). There are three types of regulatory actions "that are functionally equivalent to the classic taking," *Lingle*, 544 U.S. at 539, reflected in the Supreme Court's decisions in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), and *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

1    Lynch argues that he has a viable claim for a *Penn Central* regulatory taking, *see*
2    Dkt. 20 at 11–17, or a per se taking claim based on the Unconstitutional Conditions
3    Doctrine, *id.* at 17–18. But for Lynch to have a viable Takings Clause claim, there must
4    be a taking of private property. Defendants argue that Lynch's "expectation of public
5    benefits does not constitute a protected property right for the purpose of the Takings
6    Clause." Dkt. 19 at 4 (citing *Levesque v. Sheehan*, 821 F. Supp. 779, 778–89 (D. Maine
7    1993); *Bowen v. Gilliard*, 483 U.S. 587, 604 (1987)). Lynch argues that he has "a vested
8    protectable expectation in continuation of the Agency's level of Medicaid benefits" and a
9    "legal entitlement to use his VA benefits without being coerced into using them to pay
10   for Medicaid-covered services . . . ." Dkt. 20 at 12.

11   But Lynch fails to distinguish *Bowen*, in which the Supreme Court held that there
12   is "no protected property rights to continued benefits at the same level." *Bowen*, 483 U.S.
13   at 605. And as Defendants highlight, Lynch has not cited any opinion in which a court
14   has held that welfare benefits are protected property rights or that withholding of such
15   benefits constitutes a taking under the Fifth Amendment. The two cases he relies
16   primarily on for his theory of the case—*Cordall v. State*, 96 Wn. App. 415 (1999), and
17   *Edwards v. Griepentrog*, 804 F. Supp. 1310 (D. Nev. 1992)—were not Fifth Amendment
18   Takings Clause claims. While Lynch argues that the Agency cites no federal authority to
19   justify its actions, he has not provided binding or persuasive authority that he has a
20   protected property interest to his benefits under the Takings Clause.[3]

21

22   [3] There is case law concluding that veteran's disability benefits are property interests protected by the Due Process Clause of the Fifth Amendment. *See, e.g.*, *Cushman v. Shinseki*,

It could be that the Agency's actions are in conflict with federal Medicaid statutes and regulations, or VA benefits statutes and regulations, but that is not Lynch's claim. Under the Takings Clause, there is "no protected property rights to continued benefits at the same level." *Bowen*, 483 U.S. at 605. But even if there was a protected property interest, contrary to Lynch's assertion, the Agency has not prevented him from using his AA and UME benefits as he sees fit. It has not placed a lien on his benefits, though he argues that is the "practical effect." Dkt. 20 at 16–17. The Agency designated these benefits as third-party resources; that Lynch has to use these benefits toward his Medicaid cost of care does not amount to a taking under the Fifth Amendment. His Fifth Amendment Takings Clause claim necessarily fails under both of his theories.

Defendants' motion for judgment on the pleadings is, therefore, GRANTED, and this claim is DISMISSED with prejudice

**2.    42 U.S.C. § 1983**

Defendants next argue that Lynch's standalone § 1983 claim fails because he has not identified a federal constitutional or statutory right allegedly violated, except for his rights under the Fifth Amendment Takings Clause. Dkt. 19 at 6–7. Indeed, Lynch simply alleges that "Defendants deprived the class members of their federal constitutional and/or statutory rights as identified in the previous sections." Dkt. 1-2, ¶ 10.3. A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and alternations omitted). Section 1983 is

---

576 F.3d 1290, 1298 (Fed. Cir. 2009). But such case law is inapplicable here and may not be used to establish a protected property interest under the Takings Clause.

merely a vehicle for enforcing individual rights secured elsewhere, most typically in the United States Constitution. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002), (citing *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 617 (1979)). Lynch's complaint does not specify the federal constitutional and/or statutory rights he claims have been violated outside of the Fifth Amendment and thus does not give Defendants fair notice of what his § 1983 claim is.

Regardless, Lynch clarifies his § 1983 theories in his response. He asserts that he has a plausible claim against Birch in her individual capacity under four theories: (1) a regulatory and per se taking under the Fifth Amendment; (2) Medicaid Third-Party Liability Law; (3) Medicaid anti-lien statute; and (4) Veteran Benefits anti-assignment statute. Dkt. 20 at 19. The Court has already determined that Lynch does not have a viable Takings Clause claim but will consider his remaining theories, though unpled.

To bring a claim under § 1983, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original). Under the *Blessing* test, "a particular statutory provision gives rise to a federal right" if three requirements are met: (1) "Congress must have intended that the provision in question benefit the plaintiff;" (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence;" and (3) "the statute must unambiguously impose a binding obligation on the States." *Id.* at 340–41 (citing *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 431 (1987)).

Lynch argues that Ninth Circuit precedent supports his § 1983 claim to enforce Medicaid rights. Dkt. 20 at 20 (citing *Anderson v Ghaly*, 930 F.3d 1066, 1075 (9th Cir. 2019)). But the authority he cites is not specific to the statutes he asserts were violated. The Ninth Circuit in *Anderson* considered whether nursing home residents may bring a § 1983 claim for violations of Medicaid's requirement that states provide for a fair mechanism for hearing appeals on transfer and discharges of nursing home residents. 930 F.3d at 1069. That the Ninth Circuit held that the specific Medicaid statutory scheme related to nursing home residents' transfers and discharges was enforceable through § 1983 does not necessarily dictate that all Medicaid statutes or the specific statutes raised here are federal rights giving rise to a § 1983 claim.

Rather, Lynch's § 1983 theories fail to state a claim. First, in regard to his Medicaid Third-Party Liability Law theory, federal law requires states or local administering agencies to take "all reasonable measures to ascertain the legal liability of third parties" for costs incurred under state Medicaid plans. 42 U.S.C. § 1396a(a)(25)(A). In cases where legal liability is found to exist for monies paid out under Medicaid plans, states are required to "seek reimbursement for such assistance to the extent of such legal liability." *Id.* § 1396(a)(25)(B). The purpose of this statute is to require states to recover medical costs incurred under Medicaid programs from responsible third parties rather than relying exclusively on federal aid. *Barton v. Summers*, 293 F.3d 944, 951–52 (6th Cir. 2002). Thus, "[t]he intended beneficiary of the Medicaid recoupment statutes is the federal government." *Id.* at 953. This statute does not create a federal right actionable under § 1983 under the *Blessing* test. *Accord id.* at 953–54.

1    Next, Lynch's theory under the Medicaid anti-lien statute, 42 U.S.C. § 1396p(a),
2 fails because he has not alleged that Defendants ever imposed a lien. He appears to argue
3 that the "practical effect" of the Agency's determination of his AA and UME benefits as
4 third-party resources is to impose a lien. Dkt. 20 at 16–17. While the anti-lien "statute
5 expressly prohibits liens against the property of Medicaid beneficiaries" *Ark. Dep't of*
6 *Health & Hum. Servs. v. Ahlborn*, 547 U.S. 268, 291–92 (2006), there is no lien at issue
7 here. The Agency determined that Lynch's additional AA and UME benefits were third-
8 party resources and required that he use his third-party resources to pay as participation
9 for the COPES program. Defendants' actions here do not amount to an imposition of a
10 lien, and Lynch does not provide authority to support a conclusion otherwise.

11    Finally, and similarly, the Veteran Benefits anti-assignment statute, 38 U.S.C.
12 § 5301, is inapplicable here. The statute provides that veteran's benefit payments are non-
13 assignable, are "exempt from the claim of all creditors," and are not "liable to attachment,
14 levy, or seizure." 38 U.S.C. § 5301(a)(1). At a minimum, this "require[s] utilization of
15 some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by
16 which control over property passes from one person to another in order to discharge or
17 secure discharge of an allegedly existing or anticipated liability." *Wash. State Dep't of*
18 *Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 385 (2003)
19 (discussing the Social Security Act's anti-assignment statute); *see also Bianconi v.*
20 *Preston*, 383 F. Supp. 2d 276, 278 (applying *Keffeler* to § 5301). Defendants have not
21 made a claim of an attachment or levy nor have they seized Lynch's VA benefits; the
22

Agency (nor Birch) never actually took possession of Lynch's AA and UME benefits before he received them. Thus, the anti-assignment statute is inapplicable here.

Under these theories, Lynch's 42 U.S.C. § 1983 claim fails as a matter of law. Defendants' motion for judgment on the pleadings is, therefore, GRANTED, and this claim is DISMISSED with prejudice.[4]

**C.     State Law Claims**

Lynch also brings state law claims for conversion, unjust enrichment, violation of state vendor payment principle, and writ of mandate. Dkt. 1-2 at 13–15. Defendants argue that Lynch cannot maintain these state law claims in this Court as a matter of law because his petition for judicial review pending in Thurston County Superior Court constitutes "the exclusive means of judicial review of agency action" under the Washington State Administrative Procedure Act ("WAPA"). RCW 34.05.510. Lynch asserts that an exception to this rule applies because he is bringing a class action. Dkt. 20 at 20–21. WAPA excepts certain "ancillary procedural matters before the reviewing court," including class actions, from its exclusivity mandate. RCW 34.05.510(2).

The question of whether WAPA applies to Lynch's and the putative class's state law claims is ultimately better suited for the state court to determine. It appears to the Court that, because it is not the reviewing court (i.e., Thurston County Superior Court), WAPA's class action exception would not apply to Lynch's state law claims. But if the

---

[4] The Court's ruling here and dismissal with prejudice only applies to the theories posited by Lynch at this juncture. The Court does not intend the dismissal of Lynch's § 1983 claim to be preclusive of any future § 1983 claims under differing theories.

same claims were in fact before the reviewing court, he may be able to maintain these claims.

Under 28 U.S.C. § 1367(a), a federal court may assume supplemental jurisdiction over "all other claims that are so related to claims in the action within [the court's] original jurisdiction [such] that they form part of the same case or controversy." The Court may decline to exercise this supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The district court should "consider and weigh in each case, at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Considering the factors laid out in *Cohill*, the Court declines to exercise supplemental jurisdiction over Lynch's state law claims. The Court has dismissed all claims over which it has original jurisdiction, and the parties would not be prejudiced by it declining supplemental jurisdiction. Lynch's WAPA claim is still pending in state court, and the state court is better situated to determine whether Lynch may maintain his non-WAPA state law claims as a class action.

Defendants' motion for judgment on pleadings is therefore DENIED as to Lynch's state law claims.

## III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for judgment on the pleadings, Dkt. 19, is **GRANTED in part** and **DENIED in part**. Lynch's Fifth Amendment Takings Clause claim and 42 U.S.C. § 1983 claim are **DISMISSED with prejudice**. It is hereby further **ORDERED** that Lynch's motion to certify class, Dkt. 22, and motion for extension of time, Dkt. 36, are **DENIED without prejudice** to refile in state court.

This action shall be **REMANDED** to the Superior Court for Thurston County, Cause No. 21-2-00175-34. The Clerk is directed to send certified copies of this Order to the Clerk of the Court for Thurston County Superior Court.

Dated this 1st day of February, 2022.

BENJAMIN H. SETTLE
United States District Judge